IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                    Crim. No. 21-407 KG

PAUL MICHAEL ASTORGA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's "Motion to Suppress and Supporting Memorandum and Request for an Evidentiary Hearing *(Fourth Amendment)*" (Motion to Suppress), filed April 15, 2021. (Doc. 18). The matter is now fully and timely briefed. *See* (Docs. 21, 22, 27, 33, 38, 40, and 41).

On June 24, 2021, the Court held a limited evidentiary hearing in which United States Probation Officer (USPO) Jennifer Ramos, Defendant's USPO, testified, and counsel addressed specific legal issues. *See* (Doc. 34). Joni Autrey Stahl and Maria Armijo represented the United States at the hearing while Brock Benjamin represented Defendant, who was present.

The Court also held a telephonic conference on July 8, 2021, to determine where the seized items were found. *See* (Doc. 37). Ms. Stahl and Ms. Armijo represented the United States at the telephonic conference while Mr. Benjamin represented Defendant, who was not present.

Having considered the briefing, USPO Ramos' testimony, the argument by counsel at the evidentiary hearing, the Notices of Location of Seized Items Pursuant to Court Request (Docs.

38 and 40), the telephonic conference, the controlling law and for the following reasons, the Court denies the Motion to Suppress.

Defendant argues that his Fourth Amendment rights under the United States Constitution were violated on November 3, 2020, when "state and/or federal law enforcement agents without his consent and without a warrant based on probable cause" searched and seized his property.[1] (Doc. 18) at 1. Defendant further argues that the search and seizure violated New Mexico state law. Defendant now moves under Fed. R. Crim. P. 12(b)(3) and 41 "to suppress all evidence obtained as a result of that unlawful search and seizure."[2] *Id.* The United States opposes the Motion to Suppress in its entirety

*I. Summary of Undisputed Facts*

On February 11, 2020, United States District Judge Robert C. Brack entered an amended judgment against Defendant for a violation of the conditions of his supervised release. (Doc. 22-1) at 1. Judge Brack imposed mandatory conditions for supervised release such as prohibiting Defendant from unlawfully possessing or using a controlled substance. *Id.* at 3. Judge Brack also imposed special conditions of supervision which included prohibiting Defendant from knowingly possessing psychoactive substances, possessing drug paraphernalia, or "own[ing], possess[ing], or hav[ing] access to a firearm [or] ammunition...." *Id.* at 5-6. Another special condition required Defendant to submit to residence searches by a probation officer "when

---

[1] Defendant is charged with being a felon in possession of a firearm and ammunition, possession with intent to distribute fentanyl (and aiding and abetting), and possession of a firearm in furtherance of a drug trafficking crime. (Doc. 24).

[2] Defendant also asked that the Court set the Motion to Suppress for a hearing. As stated above, the Court, in fact, held a limited evidentiary hearing on the Motion to Suppress.

reasonable suspicion exits … for the purpose of detecting illegal substances, firearms, and ammunition." *Id.* at 5.

On October 28, 2020, a federal probation arrest warrant was issued for Defendant based on his violation of conditions of supervised release by illegally using drugs, among other things. (Doc. 22-2).[3] Las Cruces Police Department Metro Narcotics Agent J. Misquez was aware of the outstanding probation arrest warrant. *See* (Doc. 18) at 1; (Doc. 22) at 1; (Doc. 22-3) at 8.

On November 3, 2020, Defendant was arrested pursuant to the probation arrest warrant at 800 Foster #9, Las Cruces, New Mexico. *See* (Doc. 18) at 1; (Doc. 22-3) at 8. Agent Misquez and United States Marshal Service (USMS) Marshals were present for the arrest. *See id.* After Defendant's arrest, and still on November 3, 2020, Agent Misquez sought and obtained a search warrant from a state judge to search #9. *See* (Doc. 22-3).

USPO Ramos had no role in arresting Defendant other than to provide Agent Misquez with information to identify Defendant. USPO Ramos also had no involvement in the subsequent search of #9 nor did she perform a separate search of #9.

In his affidavit in support of the search warrant application, Agent Misquez states that the search warrant was "for the violation, Possession of Controlled Substance Contrary to 30-31-20 NMSA 1978." *Id.* at 8. Section 30-31-20 refers to the state crime of trafficking a controlled substance or drug trafficking. Agent Misquez's affidavit describes the place to be searched, #9, in detail and includes photographs of the outside of #9. *See id.* at 4-5. Agent Misquez also

---

[3] Once the arrest warrant was issued, USPO Ramos ceased actively supervising Defendant as a matter of officer safety. The conditions of supervised release, however, remained intact.

describes the property to be seized as "illegal controlled substances," drug paraphernalia,[4]

evidence related to buying and

selling illegal controlled substances,[5] and "firearms and/or ammunition."[6]  *Id.* at 5.

Furthermore, Agent Misquez summarizes his experience in investigating narcotics cases.  *Id.* at

7-8.

Next, Agent Misquez sets forth the "facts and information" he learned "through the

course of the investigation."  *Id.* at 8, ¶ A.  First, Agent Misquez states that Defendant was

"previously convicted of a felony" and "had a federal probation warrant for his arrest."  *Id.*

Second, Agent Misquez states that on November 3, 2020, "surveillance was established" at

Defendant's last known residence, 800 Foster #9, Las Cruces, New Mexico.  *Id.* at 8, ¶ B.  Third,

Agent Misquez states "[t]hat surveillance units witnessed a male subject matching the physical

description and likeness" of Defendant "come out of #9."  *Id.* at 8, ¶ C.  Fourth, Agent Misquez

states that he contacted the USMS and that "several Marshals approached the residence."  *Id.* at

_____

[4] When the Court employs the term "drug paraphernalia," the Court uses that part of Agent Misquez's description of "paraphernalia" that refers to items used for "ingestion and/or use of above listed drugs." (Doc. 22-3) at 5.

[5] Agent Misquez describes evidence related to buying and selling illegal controlled substances as

> any writings, records or cellular phones showing the identity of the source(s) and/or customer(s) of above described contraband, the prices sought or negotiated or paid for such drugs, amounts bought or sold. Also, any writing, records [of] utility bills and other documentation tending to show the identity of the person(s) who occupy, reside or have legal standing of above described premises and all U.S. currency in any amounts over $1000 which might be fruits of illegal drug sales.

(Doc. 22-3) at 5.  In addition, that evidence includes "any paraphernalia used for the packaging, concealment, weighing, distribution, transportation, [and] sale … of above listed drugs." *Id.*

[6] Agent Misquez states that property to be seized includes "[a]ny firearms and/or ammunition or any property associated with firearms or other explosive or destructive devices." (Doc. 22-3) at 5.

8, ¶ D. Fifth, Agent Misquez states "[t]hat as USMS knocked on the front door, Astorga attempted to jump out the back secondary story window, Astorga was advised to go to the front door." *Id.* at 8, ¶ E. Sixth, Agent Misquez states that Defendant was taken into custody after the Marshals entered #9. *Id.* at 8, ¶ F. Seventh, Agent Misquez states that #9 "smelled heavy [sic] of marijuana, and on top of a table next to the window Astorga attempted to jump out was a foil with burn marks and a pill believed to be illegal narcotics." *Id.* at 8, ¶ G. Finally, Agent Misquez states that "while on scene a neighbor came up to" Defendant and Defendant "whispered to the neighbor 'once they leave you need to get that out.'" *Id.* at 8, ¶ H.

At 4:45 p.m. on November 3, 2020, a state judge issued a search warrant for #9. *Id.* at 1. The search warrant was executed ten minutes later. *Id.* at 3. Items seized pursuant to the search warrant included a digital scale, a plastic bag with off-white pills,[7] a plastic bag with a crystal-like substance,[8] burnt foil with a white pill, a handgun, and ammunition. *Id.* Specifically, the digital scale was found in a kitchen drawer while the plastic bag with off-white pills was found on the floor of the closet in Defendant's bedroom. (Doc. 38) at 1; (Doc. 38-1); (Doc. 40) at 1; (Doc. 40-1); (Doc. 40-2). A plastic bag with a crystal-like substance and the burnt foil with a white pill were found on the top of a dresser in Defendant's bedroom. (Doc. 38) at 1; (Doc. 38-3); (Doc. 40) at 1. Another plastic bag with a crystal-like substance was found in Defendant's dresser. (Doc. 40) at 1; (Doc. 40-3). Finally, the handgun was found under the bottom drawer of a dresser in Defendant's bedroom, about two to three feet from the closet where the plastic bag with off-white pills was discovered. (Doc. 38) at 1; (Doc. 38-2).

---

[7] The pills were later determined to be fentanyl. (Doc. 38) at 1.

[8] Although the Return and Inventory refers to a plastic bag with a crystal-like substance, "[t]he crystal-like substance was in a loose powder form" and contained in two separate plastic bags, located in two different places in #9. (Doc. 40) at 1. "During the search, the agents bagged the loose powder from both locations in the evidence baggies described in the return." *Id.* 1-2.

*II. Discussion*

To support his Motion to Suppress, Defendant cites to both federal Fourth Amendment law and New Mexico state law. Defendant argues that the search warrant is unlawful because the search warrant affidavit does not establish probable cause to search #9. The United States disputes that argument and asserts, in the alternative, that the independent source doctrine preserves the seized property. Finally, Defendant argues that the good-faith exception does not apply to the execution of the search warrant. The United States, however, asserts that the good-faith exception applies and, therefore, provides another basis for denying the Motion to Suppress.

As a preliminary matter, the Court must determine whether to apply New Mexico state law to this federal Motion to Suppress. The Tenth Circuit has rejected the assertion that state law standards "should govern the admissibility of evidence seized pursuant to [a] state warrant, even though [the] case is a federal prosecution." *United States v. Le*, 173 F.3d 1258, 1264 (10th Cir. 1999). "It is … well established in this circuit that 'in federal prosecutions the test of reasonableness in relation to the Fourth Amendment protected rights must be determined by Federal law even though the police actions are those of state police officers.'" *Id.* (citation omitted). "Therefore, '[t]he fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended.'" *Id.* at 1265 (citation omitted). Following these principles, the Court declines to apply New Mexico state law to the search and seizure at issue in this federal prosecution.

*A. Fourth Amendment: Probable Cause to Search #9*

Defendant contends that Agent Misquez's affidavit in support of the search warrant application does not establish probable cause to search #9 because (1) Agent Misquez's affidavit

is an impermissible "bare bones" affidavit, and (2) there is no nexus between Agent Misquez's affidavit and the place to be searched.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by requiring probable cause to support a search warrant. U.S. Const. amend. IV. (stating that "no Warrants shall issue, but upon probable cause"). "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). Additionally, "[p]robable cause undoubtedly requires a nexus between [the contraband to be seized or] suspected criminal activity and the place to be searched." *United States v. Rowland*, 145 F.3d 1194, 1203 (10th Cir. 1998) (citation omitted). "In determining whether probable cause exists to issue a search warrant, a magistrate's task is to make a 'practical, common-sense decision' based on the totality of the circumstances as set forth in the affidavit." *Id.* at 1204 (citation omitted).

The Court further notes that "the reviewing court 'should afford a magistrate's probable cause decision great deference,'" but the reviewing court "should 'not defer if there is no substantial basis for concluding that probable cause existed.'" *United States v. Beck,* 139 Fed. Appx. 950, 954 (10th Cir. 2005) (citation and internal quotation marks omitted). Additionally, "where the police do not present oral testimony to the reviewing magistrate, the ... court must ascertain the existence of probable cause to support a warrant exclusively from the [search

warrant] affidavit's four corners."[9] *Id.* Finally, "[g]enerally, the defendant has the burden of showing a constitutional infirmity if a search or seizure was carried out pursuant to a warrant." *United States v. Esser*, 451 F.3d 1109, 1112 (10th Cir. 2006).

> *1. Whether Agent Misquez's Affidavit is a "Bare Bones" Affidavit that Cannot Establish Probable Cause*

Defendant argues that Agent Misquez's affidavit is an impermissible "bare bones" affidavit because "all that is contained [in the affidavit] to support the search of the residence is general boilerplate allegations about criminal offenses…." (Doc. 18) at 8. Defendant more specifically argues that while paragraph G of the affidavit, which refers to the heavy smell of marijuana and burnt foil with a pill, may support a search for illegal controlled substances and drug paraphernalia, the affidavit contains no facts to suggest that firearms and/or ammunition will be found at #9.

First, the Court rejects Defendant's "boilerplate" argument as conclusory and without factual support. Second, Agent Misquez's affidavit includes more than just paragraph G. Agent Misquez states that (1) he learned that Defendant was a convicted felon and had an outstanding federal probation arrest warrant; (2) on November 3, 2020, "surveillance was established" at Defendant's last known address at #9; (3) on November 3, 2020, the surveillance units saw a male matching Defendant's physical description exit #9; (4) when USMS Marshals knocked on #9, Defendant tried to jump out a back second story window but was told to go to the front door; (5) #9 had a heavy smell of marijuana and the table top next to the window Defendant tried to jump out of had a foil with burn marks and a pill believed to be an illegal narcotic; and (6)

---

[9] The Court notes that Defendant asks the Court to consider materials outside of Agent Misquez's affidavit. *See* (Doc. 33) at 6-16. Given that Agent Misquez did not present oral testimony to the state judge, the Court is confined to the four corners of Agent Misquez's affidavit to determine if probable cause existed to issue the search warrant.

Defendant whispered to a neighbor to "get that out" once law enforcement officers left. (Doc. 22-3) at 8.

A prudent magistrate viewing the totality of the above statements in a practical and common-sense manner would certainly believe there is a fair probability that evidence related to possession of a controlled substance, such as illegal controlled substances and drug paraphernalia,[10] would be found at #9. Thus, probable cause existed to search for evidence of possession of a controlled substance.

On the other hand, a prudent magistrate viewing the totality of the above statements in a practical and common-sense manner would not believe there is a fair probability that evidence of drug trafficking, like evidence relevant to buying and selling illegal controlled substances, and firearms and/or ammunition,[11] would be found at #9. The facts recited by Agent Misquez simply do not refer to any evidence of drug trafficking. The smell of marijuana, a burnt foil, and a single unidentified pill suggest, instead, personal drug use. *See, e.g. State v. Curry,* 1988-NMCA-031, ¶ 7, 107 N.M. 133 (in discussing trafficking under Section 30-31-20, New Mexico Court of Appeals stated that "[i]ntent to distribute may be inferred when the amount of a controlled substance possessed is inconsistent with personal use"); *State v. Donaldson,* 1983-NMCA-064, ¶ 25, 100 N.M. 111 (noting that "[p]roof of possession of a large quantity of a

---

[10] Evidence of drug paraphernalia is "relevant to the question of defendant's knowledge of the nature of the [illegal controlled substances] recovered from [an] apartment and their illegality in the absence of a prescription." *People v. Valdez,* 56 P.3d 1148, 1151 (Colo. App. 2002); *see also State v. Gilmore,* 537 S.W.3d 342, 346 (Mo. 2018) (noting that "contemporaneous possession of … paraphernalia may be relevant to demonstrate knowing and intentional possession of the controlled substance for which one is charged").

[11] "In the context of drug-trafficking crimes, firearms are frequently 'tools of the trade,'…." *United States v. King,* 632 F.3d 646, 655 (10th Cir. 2011) (citation omitted). Also, "ammunition is a recognized tool of the drug-dealing trade." *United States v. Gamble,* 388 F.3d 74, 77 (2d Cir. 2004).

controlled substance, inconsistent with personal use, is sufficient proof of trafficking in a controlled substance"). Consequently, Agent Misquez's affidavit does not provide probable cause to search for evidence of drug trafficking.

### 2. Whether Agent Misquez's Affidavit Provides a Nexus Between the Crime of Possession of a Controlled Substance and the Place to be Searched

Given the Court's determination of lack of probable cause to search for evidence of drug trafficking, the Court need only determine if Agent Misquez's affidavit provides a nexus between the crime of possession of a controlled substance and #9. "Whether a nexus exists to search a suspect's home depends on the strength of the case-specific evidence that links suspected criminal activity to the home." *United States v. Cotto*, 995 F.3d 786, 796 (10th Cir. 2021) (citation omitted). "In making the nexus determination, courts may consider: '(1) the type of crime at issue, (2) the extent of the suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence.'" *Id.* (citation omitted). The search "warrant is valid if the 'affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place.'" *Id.* (citation omitted).

As noted above, Agent Misquez's affidavit indicates that on November 3, 2020, #9 had a heavy smell of marijuana and contained "a foil with burn marks and a pill believed to be illegal narcotics," and Defendant whispered to a neighbor "to get that out" once law enforcement officers left #9. *See* (Doc. 22-3) at 8. From these statements, one could reasonably conclude that the type of crime at issue is possession of a controlled substance at #9.

With respect to the extent of Defendant's opportunity for concealment of evidence related to possession of a controlled substance, it is telling that when USMS Marshals knocked on #9 Defendant tried to flee by going out of a second story window but was told to go to the front

door. Defendant, therefore, had an opportunity, from the time he left the second story window and went to the front door, to conceal within #9 evidence of possession of a controlled substance, like illegal controlled substances and drug paraphernalia. In fact, the nature of that evidence easily lends itself to concealment in a residence. Finally, one could reasonably infer that criminals would hide such evidence in their residences for easy access.

From the above circumstances, a reasonable person would believe that evidence of possession of a controlled substance, such as illegal controlled substances and drug paraphernalia, would be found at #9. Consequently, Agent Misquez's affidavit provides a nexus between the crime of possession of a controlled substance and #9.

In sum, the Court concludes that Agent Misquez's affidavit provided the state judge with a substantial basis for concluding that probable cause existed that contraband or evidence linked to possession of a controlled substance would be found at #9. Hence, the Court defers to the state judge's probable cause determination as to the search for evidence of possession of a controlled substance at #9. Accordingly, the search warrant does not violate the Fourth Amendment's probable cause requirement with respect to the search and seizure of evidence of possession of a controlled substance.

Conversely, the Court concludes that Agent Misquez's affidavit does not provide the state judge with a substantial basis for concluding that probable cause existed that contraband or evidence associated with drug trafficking would be found at #9. Thus, the Court will not defer to the state judge's probable cause determination and decision to issue the search warrant to search #9 for evidence of drug trafficking. The Court, instead, concludes that Defendant has shown that the search warrant lacked probable cause to search, let alone seize, evidence of drug trafficking at #9, a violation of the Fourth Amendment.

11

*B. Severance*

Having determined that the search warrant is partially valid, the Court must decide if the valid portion of the search warrant is severable from the invalid portion. As the Tenth Circuit acknowledges, "suppression of evidence should be 'a last resort, not a first impulse.'" *Cotto*, 995 F.3d at 798 (citation omitted). "When possible, [courts] apply the doctrine of severance to save an overbroad warrant." *Id.* The severability doctrine provides that "valid portions of a warrant are severed from the invalid portions and only materials seized under the authority of the valid portions, or lawfully seized while executing the valid portions, are admissible." *Id.* at 798-99 (citation omitted).

Courts employ

> a multistep analysis to determine whether a warrant is severable. First, we divide the warrant in a commonsense way. Then we examine the validity of each section. If at least one section passes constitutional muster—meaning it satisfies the probable cause and particularity requirements of the Fourth Amendment—we determine whether the valid parts are distinguishable from the invalid ones. When "each of the categories of items to be seized describes distinct subject matter in language not linked to language of other categories, and each valid category retains its significance when isolated from [the] rest of the warrant, then the valid portions may be severed from the warrant."

*United States v. Suggs*, 2021 WL 2214216, at *8 (10th Cir.) (citations omitted). Even if portions of a portion of a search warrant can be severed, a "blanket suppression may still be required if 'the invalid portions so predominate the warrant that the warrant in essence authorizes a general, exploratory rummaging in a person's belongings.'" *Id.* (citations omitted). "In those situations, courts may admit seized items only when the valid and distinguishable portions 'make up the greater part of the warrant.'" *Id.* (citation omitted). In conducting the "greater part" inquiry, courts "use a commonsensical approach that examines both the quantitative and qualitative aspects of the valid parts of the warrant relative to the invalid parts." *Id.* Consequently, while

courts "tally the valid and invalid parts of the warrant, [courts] must also examine 'the relative scope and invasiveness' of each part." *Id.* (citation omitted).

First, the Court finds that the search warrant here is divided into four separate categories of items to be searched for and seized: (1) illegal controlled substances, (2) drug paraphernalia, (3) evidence associated with buying and selling illegal controlled substances; and (3) firearms and/or ammunition. The Court also finds that "this division is both logical and sensible...." *Suggs*, 2021 WL 2214216 at *8. Thus, the Court has "no reason to divide the warrant further." *Id.*

Second, the Court evaluates each of these categories to determine whether they are valid. As described above, there is probable cause to search for illegal controlled substances and drug paraphernalia, the two categories of evidence related to possession of a controlled substance. The Court also finds that those two categories are sufficiently particularized. Thus, the illegal controlled substances and drug paraphernalia categories are valid. However, there is no probable cause to search for evidence related to the buying and selling of illegal controlled substances, and firearms and/or ammunition, the two categories of evidence related to drug trafficking. Those two categories, therefore, are invalid.

Third, the Court must determine if it can "distinguish the valid parts of the warrant from the invalid parts." *Id.* at *9. Here, all four categories of items deal with different types of property. Also, the valid categories do not refer to the invalid categories. Accordingly, the Court finds that the valid categories, the illegal controlled substances and drug paraphernalia categories, "retain[ their] significance when isolated from [the] rest of the warrant." *See id.* at *8 (citation omitted). Put another way, the valid categories are distinguishable and severable from the invalid categories.

Finally, "[t]he only remaining question as to severability is whether the valid portions 'make up the greater part of the warrant.'" *Id.* at *9 (citation omitted). Here, the valid portions of the search warrant allowed law enforcement officers to search #9 for illegal controlled substances and drug paraphernalia. Commonsense would dictate that such a search necessarily involves a thorough search of #9. Such a thorough and invasive search of #9 would subsume any independent search connected to the invalid portions of the search warrant. Consequently, the invalid portions of the search warrant do not so predominate the search warrant that the "warrant in essence authorizes a general, exploratory rummaging in a person's belongings." *Id.* at *8 (citations omitted). In that situation, the valid and severable portions of the search warrant "make up the greater part of the warrant." *Id.* Consequently, the Court concludes that evidence seized pursuant to the valid portions of the search warrant are not subject to suppression, namely the plastic bag with off-white pills, the plastic bag with a crystal-like substance, and the burnt foil with a white pill, all evidence of possession of a controlled substance.

*C. Plain View Doctrine*

The question then arises whether evidence seized under the invalid portions of the search warrant, the portions of the search warrant related to drug trafficking, are admissible under the plain view doctrine. That evidence consists of the digital scale, the handgun, and the ammunition.

Generally, the plain view doctrine provides that "[i]f an officer is lawfully positioned in a place from which an object can be plainly viewed, the officer is permitted to notice whatever is put on display and the observation of the article is generally not considered a search." *United States v. Gordon*, 741 F.3d 64, 71 (10th Cir. 2014) (citation omitted). Officers can seize that

article "only where the incriminating character of the object is 'immediately apparent' to the officer and the officer has a lawful right of access to the object itself." *Id.* (citation omitted).

The plain view doctrine can also apply to items seized during the execution of a valid search warrant. Indeed, items named in an invalid portion of a "warrant may nevertheless be seized pursuant to the plain view doctrine so long as the government's plain view seizure scrupulously adheres to the three-prong *Horton* test.'" *United States v. Sells*, 463 F.3d 1148, 1161 (10th Cir. 2006) (citation omitted).

The *Horton* test requires that:

> (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent—i.e. the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.

*Id.* (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

In this case, "the valid portions of the warrant allowed the officers" to search #9. *See United States v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993). Hence, law enforcement officers were lawfully in #9, thereby meeting the first *Horton* prong.

Next, as to the digital scale, a digital scale found in conjunction with a plastic bag of off-white pills, plastic bags with a crystal-like substance, burnt foil, and a white pill would certainly give a law enforcement officer probable cause to believe the digital scale was evidence of the crime of drug trafficking. Digital scales in this context are commonly known as tools of the drug trafficking trade. *See, e.g., United States v. Blake,* 284 Fed. Appx. 530, 533 (10th Cir. 2008) (stating that agents found in defendant's bedroom "evidence indicative of drug trafficking: digital scales, packaging materials, and pay/owe sheets"); *United States v. Blackwell*, 2018 WL 6313543, at *4 (E.D. Ky.), *report and recommendation adopted,* 2018 WL 6313533 (E.D. Ky.) (noting that "indicia of trafficking" includes "digital scales and baggies, tools of the trade in drug

trafficking"); *United States v. Fernandes*, 2007 WL 9757838, at *6 (W.D. Tex.) (applying *Horton* test, court concluded that incriminating nature of digital scale was apparent as "tool[] of the drug trafficking trade"); *People v. Jones*, 47 A.D.3d 961, 964, 849 N.Y.S.2d 681, 685 (2008) (stating that "items commonly associated with drug trafficking [include p]lastic baggies, tin foil, a razor, prepackaged small bags of drugs, a digital scale, a cash register and cell phones"). The second *Horton* prong, therefore, is met with respect to the digital scale.

Regarding the handgun and ammunition, law enforcement officers knew that Defendant is a felon whose last known address was #9. Any law enforcement officer, therefore, would have probable cause to believe that the handgun and ammunition found in #9 were evidence of the crime of a felon in possession of a firearm and ammunition. *See* 18 U.S.C. § 922(g). In addition, considering the presence of the digital scale, the plastic bag of off-white pills, the plastic bags with a crystal-like substance, and the burnt foil with a white pill, a law enforcement officer would have probable cause to believe the handgun and ammunition were evidence of the crime of drug trafficking. Consequently, the second prong of the *Horton* test is met as to the handgun and ammunition as well.

Finally, the Court notes that since the valid portion of the search warrant gave law enforcement officers permission to search #9 for evidence of possession of a controlled substance, that permission allowed law enforcement officers "to search any containers, including closed drawers, in which drugs ... might reasonably be stored or concealed." *United States v. Heyer*, 2018 WL 6834591, at *3 (D. Mass.) (referring to valid search warrant for premises); *see also United States v. Ochoa*, 402 Fed. Appx. 478, 485 (11th Cir. 2010) (holding that "valid search warrant gave the officers lawful access to the entire apartment" to search for documents and that "guns, drugs, and other items were in plain view as the officers searched shelves,

drawers, and other places where documents might have been located"). Law enforcement

officers, therefore, had a lawful right of access to search kitchen drawers and areas in and around

dresser drawers for evidence of possession of a controlled substance, such as illegal controlled

substances and drug paraphernalia. *See Fernandes*, 2007 WL 9757838 at *6 (noting that in such

situations "access inquiry blends with the issue of lawful entry[]"). Thus, the third prong of the

*Horton* test is met as to the digital scale (found in a kitchen drawer) and the handgun and

ammunition (found under a dresser drawer). Having found that all three *Horton* prongs are met

and considering the place to be searched and the locations of the seized items, the Court

concludes that the digital scale, the handgun, and the ammunition are not subject to suppression

under the plain view doctrine. [12]

### D. Independent Source Doctrine

Even if the search warrant was constitutionally defective, the United States argues that

the independent source doctrine precludes the Court from suppressing the seized property. The

United States maintains that the special condition of supervision requiring Defendant to submit

to a residence search by his probation officer when reasonable suspicion exists is an independent

source for the search and seizures that occurred on November 3, 2020, at #9.

To establish an independent source, the United States "bears the burden of showing, by a

preponderance of the evidence, that there is truly an independent source for the challenged

evidence." *United States v. Forbes*, 528 F.3d 1273, 1279 (10th Cir. 2008). "A source is

genuinely independent if the government can show that the evidence was obtained by 'means

---

[12] Upon discovery of the digital scale, the handgun, and the ammunition, law enforcement
officers were not required to obtain a new search warrant to seize that evidence or contraband.
*See United States v. Soussi*, 29 F.3d 565, 572 (10th Cir. 1994) (holding that "satisfaction of the
*Horton* test would have justified a warrantless seizure of the items under the plain view
doctrine").

sufficiently distinguishable to be purged of the primary taint.'" *Id.* at 1278 (quoting *Wong Sun v. United States,* 371 U.S. 471, 488 (1963)). "[A] classic case [is one] in which the independent source exception … involves two separate searches." *Forbes,* 528 F.3d at 1279. Even so, the independent "source does not need to be temporally distinct from an unlawful search: 'It was of no moment that [an illegal search and a lawful independent source] all occurred as part of one brief, uninterrupted sequence of events. Rather, it was enough that a genuinely independent source of the evidence' justify a search." *United States v. Streett,* 363 F. Supp. 3d 1212, 1295 (D.N.M. 2018) (quoting *Forbes,* 528 F.3d at 1279).

Importantly in this case, the Court accepts that USPO Ramos was not present at either the initial entry of #9 or during the subsequent search of #9, and therefore did not conduct a separate search of #9. Without a search by a probation officer, no basis exists for the independent source doctrine. The Court, therefore, concludes that the United States has not shown, "by a preponderance of the evidence, that there is truly an independent source for the challenged evidence." *See Forbes,* 528 F.3d at 1279.

*E. Good-Faith Exception*

The United States further argues that the good-faith exception prevents the Court from excluding the seized property. Defendant contends that the good-faith exception does not apply due to Agent Misquez's facially deficient affidavit and bad motives.

Under the good-faith exception, if "police officers act in reasonable reliance on a search warrant, issued by a detached and neutral magistrate but ultimately found to be defective, the evidence so obtained should not be excluded." *United States v. Scales,* 903 F.2d 765, 767 (10th Cir. 1990). The Tenth Circuit explained that

> [r]eliance upon a warrant issued by a neutral magistrate creates a "presumption ... [that] the officer is acting in good faith." …

The good-faith presumption is not absolute. An "officer's reliance on the defective warrant still must be objectively reasonable." An officer's reliance is objectively unreasonable when the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

An affidavit lacks indicia of probable cause when it does not contain factual support. "When we consider whether the officer relied in good faith upon a warrant, we must look to the underlying documents to see whether they are *devoid* of factual support, not merely whether the facts they contain are legally sufficient." An affidavit devoid of factual support is "one that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge."

The affidavit does not have to be a model of specificity. "An affidavit has enough factual support to justify reliance if it establishes a *minimally sufficient nexus* between the illegal activity and the place to be searched."

*United States v. Chambers*, 882 F.3d 1305, 1310–11 (10th Cir.), *cert. denied,* 138 S. Ct. 2695 (2018) (citations omitted).

Defendant argues without factual support that Agent Misquez did not act in good faith, asserting only Agent Misquez's purported actions, including "stalking" Defendant. *See* (Doc. 33) at 4. The question under the good-faith exception is not whether Agent Misquez acted in good faith in procuring the search warrant. That question is addressed in the context of *Franks v. Delaware*, 438 U.S. 154 (1978). "Under *Franks*, '[courts] exclude evidence discovered pursuant to a search warrant when (1) a defendant proves by a preponderance of the evidence the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) ... after excising such false statements and considering such material omissions ... the corrected affidavit does not support a finding of probable cause.'" *United States v. Smith*, 846 Fed. Appx. 641, 648 (10th Cir. 2021) (citations and quotation marks omitted). "[T]he defendant must make 'more than mere allegations of defects in a warrant'" to obtain a *Franks* hearing. *Id.* (citation omitted). Defendant has not

produced any evidence that he is entitled to a *Franks* hearing. *See id.* (observing that "defendant must produce evidence of the complained-of defects by offering '[a]ffidavits or sworn or otherwise reliable statements of witnesses.'" *Id.* (citation omitted). Once more, "[t]o the extent that Defendant may be seeking a *Franks* hearing, the Court denies that request." *See* (Doc. 34) at 1.

Rather, the question under the good-faith exception is whether law enforcement officers reasonably relied on a search warrant issued by a neutral magistrate when they executed the search warrant. *See United States v. Smith*, 846 Fed. Appx. 641, 647 (10th Cir. 2021) (observing that "[t]he appropriate inquiry then for the good-faith exception is not the legal sufficiency of the affidavit, but 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization)'" (citations and quotation marks omitted)).

Defendant does not argue that the state judge who issued the search warrant was not neutral. Consequently, the Court presumes that law enforcement officers acted in good faith when they executed the search warrant. Moreover, as discussed above, Agent Misquez's affidavit provides more than an indicia of probable cause to search for evidence of possession of a controlled substance. Also, Agent Misquez's affidavit is not devoid of factual support with respect to a search for evidence of drug trafficking. Indeed Agent Misquez's affidavit contains "some modicum of evidence, however slight" that drug trafficking may be occurring at #9, specifically that Defendant whispered to a neighbor that "once they leave you need to get that out[.]" *United States v. Reed*, 993 F.3d 441, 451 (6th Cir. 2021) (stating that there must be "some connection, regardless of how remote it may have been") (citation omitted)); (Doc. 22-3) at 8. That open-ended reference to the presence of illicit evidence in #9, in conjunction with Agent Misquez's statements about the heavy smell of marijuana, the presence of burnt foil with a

pill, and Defendant's statement to a neighbor to "get that out" when the officers leave, all reasonably suggest that drug-related crimes were occurring at #9, which could include drug trafficking. Thus, Agent Misquez's affidavit provides, at the very least, a minimally sufficient nexus between drug trafficking and the place to be searched, #9. As such, Agent Misquez's affidavit demonstrates an indicia of probable cause that drug trafficking was occurring at #9.

For the above reasons, a law enforcement officer's reliance on the search warrant to search for evidence of both possession of a controlled substance and drug trafficking would be objectively reasonable. Consequently, the good-faith exception applies to the execution of the search warrant and provides a basis for denying the Motion to Suppress.

*III. Conclusion*

Agent Misquez's affidavit provides probable cause to search #9 for evidence of possession of a controlled substance. Agent Misquez's affidavit, however, does not provide probable cause to search #9 for evidence of drug trafficking.

Furthermore, the valid portion of the search warrant related to searching for evidence of possession of a controlled substance is severable from the invalid portion related to searching for evidence of drug trafficking. Consequently, law enforcement officers did not violate the Fourth Amendment when they seized a plastic bag with off-white pills, plastic bags with a crystal-like substance, and burnt foil with a white pill, pursuant to the valid portion of the search warrant.

Although law enforcement officers seized evidence of drug trafficking under the invalid portion of the search warrant, i.e., the digital scale, the handgun, and the ammunition, law enforcement officers did not violate the Fourth Amendment because that evidence was properly seized under the plain view doctrine.

In addition, while the Court rejects the United States' independent source theory for justifying the seizure of evidence in this case, the Court determines that the good-faith exception supplies another basis for seizing the evidence under the Fourth Amendment. Finally, the Court denies any request for a *Franks* hearing. For all of the foregoing reasons, the Court denies the Motion to Suppress.

IT IS ORDERED that the Motion to Suppress and Supporting Memorandum and Request for an Evidentiary Hearing *(Fourth Amendment)* (Doc. 18) is denied.

UNITED STATES DISTRICT JUDGE